UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

YANCY WEAREN, #02-B-0627,

        Petitioner,

        -v-                              07-CV-0040(MAT)
                                                 **ORDER**
JAMES T. CONWAY, Superintendent of
Attica Correctional Facility,

        Respondent.

## I. Introduction

*Pro se* petitioner Yancy Wearen ("petitioner") filed this timely petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction of Murder in the Second Degree (N.Y. Penal L. § 125.25[1]; 20.00) on March 25, 2002 in Monroe County Court following a jury trial before Judge Frank Geraci.

## II. Factual Background and Procedural History

Just before noon on Friday, October 6, 2000, petitioner and co-defendant, Roderick Johnson ("Johnson"), repeatedly shot Felton Henderson ("the victim"), causing his death, at Ravine Avenue and Tacoma Street in Rochester, New York. Several eyewitnesses were present at the scene, who provided descriptions of two or three persons they thought had been involved in the shooting.

Reports of a shooting on Tacoma Street, along with a description of three black males and their clothing (one wearing a "silver bubble coat", one wearing a red coat, and one wearing a flannel shirt) was communicated over police radio. Rochester Police

Officer Michael Marcano ("Marcano") was working at a truancy center on Backus Street when he observed three black males who matched the broadcast description walking southbound through an open field. Marcano advised the dispatcher that he had three suspects in sight. When Marcano approached the youths, they ran. T. 788-796.[1]

Shortly thereafter, petitioner was seized at 41 Phelps Avenue, where he was found watching television with another young man.[2] T. 900-01. While escorting petitioner out of the house, Marcano observed a "silver grayish jacket, puffy jacket," the same jacket he previously saw one of the suspects wearing. T. 798. Petitioner acknowledged that it was his jacket, and Marcano handed it to him, remarking that the jacket felt "cold". Petitioner responded, "well, it's cold outside." T. 799.

At the scene of the shooting, police recovered shell casings from weapons of two different calibers, indicating that two guns were used in the shooting. T. 1086-87. An autopsy performed on the victim indicated four entrance wounds and one exit wound. Fragments extracted from the victim's body were then sent to the Monroe County Public Safety Laboratory for examination, which concluded that the fragments came from separate weapons. T. 1196-1203, 1210-1215.

A jury found petitioner and Johnson guilty of intentional

---

[1] Citations to "T.__" refer to pages of the trial transcript.

[2] Johnson was also found in the same house, hiding behind a piece of furniture. T. 1005-06.

murder. Petitioner was subsequently sentenced to twenty-five years to life imprisonment. Sentencing Mins. 6-8.

Petitioner appealed the judgment of conviction to the Appellate Division, Fourth Department, raising the following issues: (1) a Miranda violation; (2) the verdict was against the weight of the evidence and the conviction was not supported by legally sufficient evidence; (3) ineffective assistance of trial counsel; and (4) harsh and excessive sentence. In a *pro se* supplemental brief, petitioner argued that (1) the evidence was insufficient to support a conviction for intentional murder under an accomplice liability theory; (2) ineffective assistance of trial counsel due to "cumulative errors"; and (3) the trial court abused its discretion in failing to give a circumstantial evidence charge. See Respondent's Exhibits ("Ex.") H, L. Petitioner's judgment of conviction was unanimously affirmed. People v. Wearen, 19 A.D.3d 1133 (4th Dept. 2005); lv. denied, 5 N.Y.3d 834 (2005).

Petitioner then made an application for a writ of *error coram nobis*, alleging ineffective assistance of appellate counsel, see Ex. Q, which was denied by the Fourth Department. People v. Wearen, 32 A.D.3d 1366 (4th Dept. 2006); lv. denied, 8 N.Y.3d 850 (2007).

Petitioner then brought the instant petition for habeas corpus, alleging seven grounds[3] for relief. (Dkt. #1). He later provided the Court with a Traverse detailing those claims. (Dkt.

---

[3] Many of petitioner's claims are related or duplicative of one another, and are discussed herein as four distinct claims.

#14). For the reasons that follow, the petition is denied and the action is dismissed.

**III. Discussion**

    **A.    General Principles Applicable to Habeas Review**

        **1.    Standard of Review**

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a claim that was "adjudicated on the merits" in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(2). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," limits the law governing a habeas petitioner's claims to the holdings (not *dicta*) of the Supreme Court existing at the time of the relevant state-court decision. Williams, 529 U.S. at 412; accord Sevencan

v. Herbert, 342 F.3d 69, 73-74 (2d Cir. 2002), cert. denied, 540 U.S. 1197 (2004).

A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case. Williams, 529 U.S. at 413; see also id. at 408-10. "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently." Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001). Rather, "[t]he state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable." Id. This increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir. 2003) ("The presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."), cert. denied sub nom. Parsad v. Fischer, 540 U.S. 1091 (2003). A state

court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

**B. Merits of the Petition**

   **1. Miranda Violation**

The first ground of the petition alleges that the police failed to advise petitioner of his rights under Miranda v. Arizona, 384 U.S. 436 (1966). Petition ("Pet") ¶ 12(A). On direct appeal, the Appellate Division rejected petitioner's Miranda claim:

> Defendant contends that he was in custody when he made statements concerning a gray jacket and that those statements therefore should have been suppressed because his Miranda warnings had not been administered. Even assuming, arguendo, that defendant was in custody when he made those statements, we conclude that the statements were spontaneous and were not the product of express interrogation or its functional equivalent... it cannot be said that defendant's statements were in response to interrogation, i.e. words or actions by police that were intended or likely to elicit an incriminating response.

Wearen, 19 A.D.3d at 1134 (citations and quotations omitted).

A person questioned by law enforcement officers after being "taken into custody or otherwise deprived of his freedom of action in any significant way" must be "warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an

attorney, either retained or appointed." Miranda, 384 U.S. at 444. The holding of Miranda makes clear, however, that "[v]olunteered statements of any kind are not barred by the Fifth Amendment." Id at 478; see also Wolfrath v. LaVallee, 576 F.2d 965, 973 n.6 (2d Cir. 1978) ("spontaneous statements which are not the result of 'official interrogation' have never been subject to [Miranda's] strictures.")

Although it is arguable whether petitioner was in custody at the time of his statements to Officer Marcano, the Fifth Amendment analysis here turns on whether his statement was volunteered or the product of interrogation. The Supreme Court set forth the standard for determining whether a statement is the product of interrogation in Rhode Island v. Innis, 445 U.S. 291, 300-301 (1980):

> We conclude that the Miranda safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. That is to say, the term "interrogation" under Miranda refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.

Innis, 445 U.S. at 300-301 (footnote omitted).

The record indicates that as Marcano walked over to the area where he observed the silver/gray jacket, petitioner affirmatively stated that it was his jacket. Marcano remarked that the jacket was cold; petitioner responded that it was cold outside and put the

jacket on. Marcano had no further contact with petitioner. T. 798-99. Under these circumstances, I do not find that the statements were a product of interrogation or its "functional equivalent." Innis, 446 U.S. at 299-301 (a "practice that the police should know is reasonably likely to evoke an incriminating response from ma suspect . . . amounts to interrogation."). As such, the Appellate Division did not unreasonably apply Federal law in rejecting petitioner's Miranda claim.

### 2. Legally Insufficient Evidence

In grounds two and five of the instant petition, petitioner challenges the legal sufficiency of the evidence supporting his conviction for second-degree murder under an accomplice liability theory. Pet. ¶ 12(B), (E); Traverse ("Trav.") at 4-8. The Appellate Division found that the conviction was supported by legally sufficient evidence, and that the verdict was not against the weight of the evidence. Wearen, 19 A.D.3d at 1134 (citing People v. Bleakley, 69 N.Y.2d 490, 495 (1987)).

When a petitioner for habeas corpus challenges the sufficiency of the evidence presented at trial, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979).

Petitioner was charged and convicted of intentional murder,

see Penal L. § 125.25[1], under a theory of accomplice liability, see Penal L. § 20.00, which imputes criminal liability for the conduct of another. The following proof was presented at trial: several witnesses testified that petitioner was at the site of the shooting, wearing a gray/silver puffy coat or vest, and holding a gun. There were two shooters, and two types of bullets recovered from the scene of the shooting as well as from the victim's body. One witness, who knew the petitioner by name, saw petitioner raise his arm as if to shoot, and observed "fire" coming from the petitioner and another man. She also saw the victim grab his side and fall. T. 588-94. In the instant case, there was sufficient evidence for a jury to have found that petitioner intended to cause the victim's death and that he acted in concert with Roderick Johnson in shooting the victim to death. See Penal L. §§ 125.25[1], 20.00. Thus, in determining that there was sufficient evidence to support petitioner's convictions, the Appellate Division's decision was not contrary to, or an unreasonable application of Jackson v. Virginia.

### 3. Ineffective Assistance of Trial Counsel

In grounds three and six of the petition, petitioner attacks his trial counsel's effectiveness on the following grounds: (1) trial counsel failed to request a circumstantial evidence charge; (2) counsel failed to request a "no adverse inference" charge; and (3) counsel failed to move for severance from co-defendant Roderick

Johnson. Pet. ¶ 12(C), (F). The Appellate Division, in viewing petitioner's claims as a whole, concluded that he received "effective assistance of counsel." Wearen, 19 A.D.3d at 1135.

As observed by the Second Circuit, a habeas petitioner claiming ineffective assistance of counsel bears a "heavy burden." Eze v. Senkowski, 321 F.3d 110, 112 (2d Cir. 2003). To establish that he was deprived of his Sixth Amendment right to the effective assistance of trial counsel, a petitioner must show that (1) his attorney's performance was deficient, and that (2) this deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). Deficiency is measured by an objective standard of reasonableness, and prejudice is demonstrated by a showing of a "reasonable probability" that, but for counsel's unprofessional errors, the result of the trial would have been different. Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding." Id. To succeed, a petitioner challenging counsel's representation must overcome a "strong presumption that [his attorney's] conduct falls within the wide range of reasonable professional assistance." Id. at 689. A reviewing court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct," id., and may not second-guess defense counsel's strategy. Id. at 690. The Court finds that petitioner has failed to demonstrate that his counsel's conduct was deficient within the

meaning of Strickland, and that, but for the deficiency, the result of his trial would likely have been different.

### a. Circumstantial Evidence Instruction

Petitioner first claims that his defense counsel was ineffective for failing to request a circumstantial evidence jury charge. See Trav. at 9.  Under New York law, "[w]henever a case relies wholly on circumstantial evidence to establish all elements of the charge, the jury should be instructed, in substance, that the evidence must establish guilt to a *moral certainty*." People v. Daddona, 81 N.Y.2d 990, 992 (1993)(citation omitted) (emphasis added). "However, where a charge is supported with both circumstantial and direct evidence, the court need not so charge the jury." Id.  It is well-settled in the Second Circuit that "when a trial court's instruction is legally correct as given, the failure to request an additional instruction does not constitute deficient performance." Aparicio v. Artuz, 269 F.3d 78, 99 (2d Cir. 2001).

Here, petitioner's case did not rely "wholly on circumstantial evidence. Daddona, 81 N.Y.2d at 992.  Rather, the prosecution presented the following direct evidence of petitioner's guilt: Chennel Connor, who knew the petitioner personally, observed petitioner's arm outstretched and "fire" coming from the direction of petitioner and Johnson.  She then saw the victim stumble and grab his side. T. 591-94.  See, e.g., People v. Lewis, 300 A.D.2d

827 (3rd Dept. 2002); lv. denied, 99 N.Y.2d 630 (2003) (finding "moral certainty" charge unnecessary where direct evidence consisted of an eyewitness observing defendant lunging at victim making stabbing motions with gloved hands, but was not seen with a knife). It is therefore unlikely that the trial court would have granted a circumstantial evidence charge had it been requested. Because petitioner was not entitled to a "moral certainty" jury charge, defense counsel's decision not to seek such charge was not objectively unreasonable. See Warren v. Conway, No. CV-07-4117, 2008 WL 4960454 at *29 (E.D.N.Y. Nov. 18, 2008) (counsel's failure to request a circumstantial evidence charge was not objectively unreasonable where the prosecutor presented both direct and circumstantial evidence of petitioner's guilt, and the charge was not warranted); Jackson v. Conway, 448 F.Supp.2d 484 (W.D.N.Y. 2006) ("Because [petitioner] was not entitled to a circumstantial evidence charge as a matter of New York state law, he therefore was not prejudiced by trial counsel's failure to request one."); Johnson v. West, No. 9:04-CV-751, 2007 WL 952058 at *7 (N.D.N.Y. 2007) (failure to request circumstantial evidence charge did not prejudice petitioner where such a charge was unwarranted).

### b.  **Adverse Inference Instruction**

Petitioner argues that because the silver/gray jacket was not produced at trial, his attorney should have sought an adverse inference jury charge against the prosecution. Trav. at 11.

Petitioner cites no state or federal law supporting that an adverse inference charge should have been given.  However, to the extent the jacket may have been relevant, defense counsel used its absence to petitioner's advantage by emphasizing that no police reports contained any reference to a silver/gray jacket, and that despite police efforts to recover the jacket, it was never located. He recounted the testimony of other arresting officers at 41 Phelps, noting that they did not mention the jacket, suggesting that Officer Marcano's testimony was erroneous and should be discredited by the jury. T. 1260-66. Counsel also extensively cross-examined the prosecution's witnesses on that issue.

Moreover, assuming defense counsel had reason to request the curative instruction, petitioner cannot show prejudice under the second prong of Strickland.  There was ample evidence to connect petitioner to the shooting, including one eyewitness that knew petitioner by name and saw him shoot the victim. See Villacreses v. Rivera, 485 F.Supp.2d 239 (E.D.N.Y. 2007) (failure to request curative instruction as to missing evidence did not prejudice petitioner's defense because, in light of all the evidence, such instruction would have not changed the verdict); aff'd 327 Fed. Appx. 303 (2d Cir. 2009) (unpublished opinion); Castillo v. Walsh, 443 F.Supp.2d 557, 567 (counsel's failure to request an adverse inference charge or other sanction for missing 911 tapes was not unreasonable and, an any event, did not affect the outcome of petitioner's trial).

### c. Failure to Move for Severance

The record indicates that defense counsel did move for severance from co-defendant Johnson. Trav. at 12. The trial court ultimately denied that request. See Decision and Order, Ind. # 2000-055 A & B, dated 6/8/2001; Ex. D. As such, this claim is without merit.

In sum, even if trial counsel's alleged errors are viewed collectively, petitioner has failed to demonstrate that the appellate court unreasonably applied federal law in determining that trial counsel's representation was not constitutionally infirm.

### 4. Harsh and Excessive Sentence

Petitioner contends that his sentence of twenty-five years to life is harsh and excessive. Pet. ¶ 12(D). A petitioner's challenge to the length of his prison term does not present a federal claim subject to review by a habeas court if the sentence falls within the statutory range. Townsend v. Burke, 334 U.S. 736, 741 (1948) ("The [petitioner's] sentence being within the limits set by the statute, its severity would not be grounds for relief here even on direct review of the conviction, much less on review of the state court's denial of habeas corpus."); White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992) ("No federal constitutional issue is presented where ... the sentence is within the range prescribed by state law.") (citing Underwood v. Kelly, 692 F.Supp. 146 (E.D.N.Y. 1988),

aff' mem., 875 F.2d 857 (2d Cir. 1989)); accord Ross v. Gavin, 101 F.3d 687 (2d Cir.1996) (unpublished opinion).

Petitioner was sentenced to an indeterminate sentence of twenty-five years to life imprisonment. This sentence is within the statutory sentencing guidelines in New York. See Penal L. § 70.00. Because petitioner has not presented a claim that is cognizable on habeas review, the challenge to petitioner's sentence is dismissed.

**IV. Conclusion**

For the reasons stated above, Yancy Wearen's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the action is dismissed. Because petitioner has failed to make a "substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability. See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000). The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. Coppedge v. United States, 369 U.S. 438 (1962).

    **SO ORDERED.**

                                       s/Michael A. Telesca
                                        MICHAEL A. TELESCA
                              United States District Judge

Dated:    March 5, 2010
          Rochester, New York